UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FREDERICK BROECKER (individual);
FREDERICK BROECKER d/b/a WIDOWS SONS
MASONIC RIDERS ASSOCIATION; and
WIDOWS SONS MASONIC RIDERS
ASSOCIATION, INC.,

                              Plaintiffs,                    DECISION AND ORDER

vs.
                                                              21-CV-6309 (CJS)

WIDOWS SONS GRAND CHAPTER THE KING'S
GUARD INC.; THE ALLIANCE WIDOWS SONS
MRA WORLDWIDE, INC.; and
ANDREAS M. REYNOLDS,

                              Defendants.
_____

        This is a copyright and trademark dispute over logos and other identifying insignia used by competing Masonic motorcycle associations. Plaintiffs have a copyright registered with the United States Copyright Office in "artwork comprising a winged pyramid with sun rising at the apex and an all-seeing-eye in the center" (the "Wings Work"). Defendants have similar artwork registered as a trademark with the United States Patent and Trademark Office.

        Plaintiffs filed a complaint against Defendants seeking a declaratory judgment of trademark ownership, cancellation of Defendants' registered trademark, and relief for Defendants' alleged trademark infringement, copyright infringement, and contributory copyright infringement. Compl., Apr. 8, 2021, ECF No. 1. The matter is presently before the Court on Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mot. to Dismiss, June 7, 2021, ECF No. 10. For the reasons stated below, Defendants' motion to dismiss [ECF No. 10] is granted with respect to Plaintiffs'

claims for declaratory judgment, and cancellation of Defendants' registration of the "Wings Mark" with the USPTO. Defendants' motion to dismiss [ECF No. 10] is denied in all other respects. Defendants are directed to file and serve a response to the remaining claims within 30 days of the date of this order.

BACKGROUND

The Court has drawn the following background from Plaintiffs' complaint and exhibits. Plaintiff Widows Sons Masonic Riders Association ("WSMRA") was founded in Illinois in 1998 by Carl Davenport. Compl. at ¶ 15–16. Plaintiff Frederick Broecker joined WSMRA in 1999, and has been a member since that time. Compl. at ¶ 16. In October 2003, Broecker registered the "Widows Sons Masonic Riders Association" as his assumed business name, and in 2013 helped to incorporate Plaintiff Widows Sons Masonic Riders Association, Inc. ("WSMRA, Inc.") as a not-for-profit corporation in the state of Illinois. Compl. at ¶ 17–18. Although WSMRA, Inc. is not presently an active corporation in the state of Illinois, WSMRA continues to operate as an international network of chapters of freemason motorcyclists who agree to abide by a common set of by-laws. Compl. at ¶ 21, 23.

WSMRA has created and adopted logos and other identifying insignia that only members of the WSMRA network are allowed to display to show their affiliation with WSMRA. Compl. at ¶ 22, 26. Among those logos and insignia is the "Wings Work," which is "artwork comprising a winged pyramid with sun rising at the apex and an all-seeing-eye in the center." Compl. at ¶ 32–33. Broecker registered a version of the Wings Work entitled "WS Patch Wings Work" with the U.S. Copyright Office in 2007, and is the owner

of all interest, right, and title to that work. Compl. at ¶ 33.

Additionally, in or about 2004, Broecker began using the Wings Work with the wording "Widows Sons" and "Meet on the level & Part upon the Square" as the WSMRA trademark ("Wings Mark"). Compl. at ¶ 35. Broecker and WSMRA have been using the trademark continuously since early 2005, and WSMRA registered the Wings Mark with the state of Illinois in November 2013. Compl. at ¶ 36–37; Compl. (Ex. 9). Neither Broecker nor WSMRA registered the Wings Mark with the United States Patent and Trademark Office ("USPTO").

In or about 2011, Defendant Andreas M. Reynolds founded a motorcycle group in Rochester, New York and inaccurately claimed to have been authorized as a WSMRA member. Compl. at ¶ 27. In November 2013, Reynolds' group incorporated as a New York corporation: Defendant Widows Sons Grand Chapter The King's Guard Inc. ("King's Guard"). In May 2015, Reynolds formed another New York corporation: Defendant The Alliance Widows Sons MRA World Wide, Inc. ("Alliance"). Compl. at ¶ 30. Despite never having been properly accepted into the WSMRA network, and despite not having permission from WSMRA to do so, Defendants have used and continue to use the Wings Mark on patches, their websites, and more. Compl. at ¶ 31, 39–42.

In November 2013, King's Guard filed a trademark application with the United States Patent and Trademark Office ("USPTO") to register the Wings Mark as its own trademark, claiming 2009 as its date of first use. Compl. at ¶ 43, 48. Broecker instituted a timely opposition to King's Guard's application, but was unable to afford legal

3

representation to continue and the USPTO's Trademark Trials and Appeals Board[1] found that Broecker "conceded" to Defendants' motion to dismiss and dismissed his opposition in September 2015. Compl. at ¶ 50–51. By April 2016, the Wings Mark was registered to King's Guard as a trademark, and King's Guard executed an assignment of the registered mark to Alliance. Compl. at ¶ 52.

At least as early as September 2017, without authorization from Broecker or the WSMRA, and in addition to their use of the Wings Mark, Defendants reproduced the Wings Work, displayed the Wings Work on their websites, created derivative works of the Wings Work to include coins and patches, and offered the works for sale over the internet. Compl. at ¶ 58–61. In addition, upon Plaintiffs' information and belief, Defendants "also profit by licensing without authorization the use of the Wings Mark, Wings Work and its derivative works to individuals and groups (collectively, 'Individual Infringers') . . . for $50 . . . and encouraging the Individual Infringers to reproduce, display, and otherwise use in commerce the Wings Mark, the Wings Work, and other marks that are confusingly similar to the Wings Mark." Compl. at ¶ 62.

Based on the foregoing allegations, Plaintiffs filed the present suit seeking a declaratory judgment that they own the Wings Mark and cancellation of Defendants' registration of the Wings Mark with the USPTO. Plaintiffs also seek damages for trademark infringement, copyright infringement, and contributory copyright infringement, as well as a permanent injunction against Defendants' use of the Wings Work and the

---

[1] Although the USPTO's Trademark Trials and Appeals Board is the body that considered Plaintiffs' opposition to Defendants' trademark application, for ease of discussion the Court will refer simply to the "USPTO" throughout this decision.

Wings Mark. The matter is presently before the Court on Defendants' motion to dismiss Plaintiffs' complaint for failure to state a claim.

STANDARD OF REVIEW

At the outset, the Court notes that the purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis omitted). An action must be dismissed under Rule 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). To survive a motion to dismiss under Rule 12(b)(6), on the other hand, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where a plaintiff's factual allegations are "merely consistent with" a defendant's liability, those allegations "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557). Moreover, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (citation and internal quotation marks omitted).

5

DISCUSSION

Defendants' present several arguments in support of their motion to dismiss Plaintiffs' complaint. They maintain that Plaintiffs' request for a declaratory judgment that they own the Wings Mark should be dismissed because it will not finalize the controversy, is barred by the statute of limitations, and is barred by the doctrine of *res judicata* due to Plaintiffs' trademark opposition before the USPTO in 2015. With respect to Plaintiffs' request for cancellation of Defendants' trademark registration, Defendants argue that this, too, is barred by *res judicata* and by the fact that Plaintiffs did not timely appeal the USPTO's dismissal of their opposition. Regarding Plaintiffs' trademark and copyright infringement claims, Defendants argue for dismissal based on the respective statutes of limitation and the incontestability of Defendants' trademark. Lastly, Defendants contend that Widows Sons Masonic Riders Association, Inc. (WSMRA, Inc.) is not a proper party to this suit because it is an inactive corporation. For ease of discussion, the Court will address Defendants' arguments out of order.

Plaintiff WSMRA, Inc.'s Inactive Status

Defendants argue that because WSMRA, Inc. is an inactive corporation (Compl. at ¶ 6), it lacked the capacity to sue and should therefore be dismissed as a party to this case. In their opposition papers, Plaintiffs state that "[i]t is public knowledge that the WSMRA, Inc. became inactive effective April 10, 2015,"[2] but note that the corporation's

---

[2] Plaintiffs support this fact by pointing the Court to a searchable database on the Illinois Secretary of State's website. The website verifies that WSMRA, Inc. was a not-for-profit corporation, involuntarily dissolved on April 10, 2015. *See Goldman v. Barrett*, No. 15 CIV. 9223 (PGG), 2017 WL 4334011, at *1 (S.D.N.Y. July 25, 2017), *aff'd*, 733 F. App'x 568 (2d Cir. 2018) (collecting cases supporting the proposition that it is proper to take judicial notice of state administrative records from an official government website).

claims against Defendants "accrued prior to its involuntarily becoming inactive because Defendants' unlawful acts at least partially caused Plaintiff WSMRA, Inc. to become inactive." Pl. Mem. in Opp., 18–19, Jul. 12, 2021, ECF No. 12. Thus, Plaintiffs argue that WMSRA, Inc. should not be dismissed at this stage because the analysis would require a factual determination of when various causes of action accrued, which would be improper on a 12(b)(6) motion. Pl. Mem. in Opp. at 19.

The Second Circuit recently discussed the effect of corporate dissolution on capacity to sue:

> Corporate dissolution implicates two potentially distinct legal concepts: capacity to sue and legal existence . . . . the former is non-jurisdictional in nature. Capacity to sue addresses only whether a person or company that possesses an enforceable right may act as a litigant . . . . And although it is allied with . . . the question of standing, capacity is conceptually distinct . . .

*Fund Liquidation Holdings LLC v. Bank of Am. Corp*., 991 F.3d 370, 382 (2d Cir. 2021) (internal quotation marks and citations omitted). The question of capacity to sue is determined "for a corporation, by the law under which it was organized." Fed. R. Civ. P. 17(b)(2). "By its plain terms, th[is] Rule seems to contemplate that a foreign corporation may file suit in federal court so long as it has capacity to sue under the law of its state of incorporation . . . ." *Domino Media, Inc. v. Kranis*, 9 F. Supp.2d 374, 380 (S.D.N.Y. 1998), *aff'd*, 173 F.3d 843 (2d Cir. 1999).

The Illinois General Not For Profit Corporation Act of 1986 (805 Ill. Comp. Stat. Ann. 105/101.01 *et seq.*) empowers the Secretary of State to dissolve any corporation administratively for such reasons as failure to file the annual report required by the Act, failure to pay fees prescribed by the Act, and various other administrative grounds. 805

Ill. Comp. Stat. Ann. 105/112.35. The Act provides that "[t]he administrative dissolution of a corporation terminates its corporate existence and such a dissolved corporation shall not thereafter carry on any affairs, provided however, that such a dissolved corporation may take all action authorized under . . . this Act or as otherwise necessary or appropriate to wind up and liquidate its affairs . . . ." 805 Ill. Comp. Stat. Ann. 105/112.40. Nevertheless, "[u]pon the filing of [an] application for reinstatement, the corporate existence [of the dissolved corporation] for all purposes shall be deemed to have continued without interruption from the date of the issuance of the certificate of dissolution, and the corporation shall stand revived with such powers, duties and obligations as if it had not been dissolved . . . ." 805 Ill. Comp. Stat. Ann. 105/112.45.[3]

Several Illinois state appellate courts have therefore applied the relation back doctrine to allow an involuntarily dissolved corporation to file – but not obtain judgment on – a suit that otherwise could be filed. *Henderson-Smith & Assocs., Inc. v. Nahamani Fam. Serv. Ctr., Inc*., 752 N.E.2d 33, 37–39 (Ill. App. Ct. 2001) (collecting cases); *see also Young Am.'s Found. v. Doris A. Pistole Revocable Living Tr.,* 998 N.E.2d 94, 107 (Ill App. Ct. 2013) (finding the Corporation Act and the Not for Profit Corporation Act to be "parallel"). "The significance of a corporation being able to file suit, while administratively dissolved, is that the filing effectively stops the statute of limitations from running." *Henderson-Smith & Assocs., Inc*., 752 N.E.2d at 38. Thus, the delinquent corporation faces only a temporary impediment to the enforcement of its rights, "which can be

---

[3] Notably, this statute formerly contained a provision limiting the reinstatement period to five years from the date of dissolution. That five year limitation was removed by the Illinois legislature in P.A. 92-33, § 10, eff. July 1, 2001.

removed by the simple expedient of" rectifying the errors that led to its administrative dissolution. *Id.* at 39 (discussing *Merchants Environmental Industries, Inc. v. Montgomery Ward & Co., Inc.*, 625 N.E.2d 689 (Ill. App. Ct. 1993)).

Having considered the complaint and the parties' arguments in light of Illinois state law, the Court declines to dismiss WSMRA, Inc. at this early stage of the proceedings. Defendants' motion in this regard is denied without prejudice to renewal upon a more robust factual basis.

<u>Declaratory Judgment of Trademark Ownership</u>

Plaintiffs ask the court to exercise its authority under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to declare Plaintiffs' ownership of the Wings Mark. Defendants maintain that the Court should deny this request because, among other things, a declaratory judgment will not finalize the controversy between the two parties.

28 U.S.C. § 2201(a) provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The Second Circuit has outlined five factors for courts to consider in evaluating a request for declaratory judgment:

> (i) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (ii) whether a judgment would finalize the controversy and offer relief from uncertainty; (iii) "whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to *res judicata*;'" (iv) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (v) whether there is a better or more effective remedy.

*New York Times Co*., 459 F.3d at 167 (quoting *Dow Jones & Co., Inc. v. Harrods Ltd*., 346 F.3d 357, 359–60 (2d Cir. 2003)). It is well-established that this provision "confers discretion on the courts [to issue a declaratory judgment] rather than an absolute right upon the litigant" to obtain such a determination. *The New York Times Co. v. Gonzales*, 459 F.3d 160, 165 (2d Cir. 2006) (quoting *Wilton v. Seven Falls Co*., 515 U.S. 277, 287 (1995)).

In the present case, the second and the fifth factors weigh heavily in favor of dismissal of Plaintiffs' request for declaratory judgment. To begin with, a declaratory judgment that Plaintiff was owner of the Wings Mark would not finally resolve the issues raised in this case, most particularly as to whether Defendants have infringed on Plaintiffs' trademark. To finally resolve the issues between the parties over the Wings Mark, the more effective remedy is the Court's further consideration of Plaintiffs' trademark infringement, false designation of origin, and unfair competition claims pursuant to 15 U.S.C. § 1125(a)(1).

In order for a party without a registered trademark to prevail on a trademark infringement claim, the party must establish that "(1) he owns a valid mark entitled to protection under the Lanham Act; (2) defendant used the protected mark in commerce, without plaintiff's consent; and (3) defendant's use of that mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Lopez v. Nike, Inc*., No. 20CV905PGGJLC, 2021 WL 128574, at *4 (S.D.N.Y. Jan. 14, 2021), *report and recommendation adopted*, No. 20CIV905PGGJLC, 2021 WL 2207451 (S.D.N.Y. Feb. 16, 2021) (quoting *Merck & Co, Inc., v. Mediplan Health Consulting, Inc*., 425 F.

10

Supp.2d 402, 411 (S.D.N.Y. 2006)). *See also 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005). False designation of origin and unfair competition claims require an identical test to that for infringement. *Richemont N. Am., Inc. v. Huang*, No. 12-CV-4443 (KBF), 2013 WL 5345814, at *5 n.15 (S.D.N.Y. Sept. 24, 2013). In attempting to satisfy the first element – ownership of a valid mark entitled to protection – Plaintiffs will have to demonstrate ownership of the mark. Thus, the factors weigh clearly in favor of dismissing the declaratory judgment claims and the Court need not consider whether the statute of limitations has run, or the claim is barred by *res judicata*.

Trademark Cancellation and Trademark Infringement

With respect to Plaintiffs' other trademark-related claims, Plaintiffs allege that the WSMRA began using the Wings Mark as its logo as early as 2004, and has continuously used it since. Compl. at ¶ 35–36. Plaintiffs further allege that Defendant King's Guard fraudulently filed for an application with the USPTO to register the Wings Mark and made multiple statements that it knew or should have known to be false: namely, that the King's Guard was the owner of the mark, and began using the mark as early as 2009. Compl. at ¶ 43–48. They allege that Defendants continue to use the Wings Mark "commercially" through such practices as selling coins and patches bearing the Wings Mark to others. Compl. at ¶ 58–62. Therefore, Plaintiffs seek cancellation of Defendants' trademark registration, damages for trademark infringement, false designation of origin, and unfair competition, and a permanent injunction from Defendants' use of the Wings Mark.

In moving to dismiss, Defendants argue that Plaintiffs' trademark claims are barred by the applicable statute of limitations and the doctrine of laches, barred by Plaintiffs'

failure to appeal the TTAB's dismissal of Plaintiffs' opposition, barred by *res judicata*, and that their trademark is "incontestable."

*Statute of Limitations and Laches for the Trademark Claims*

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Deswal v. U.S. Nat. Ass'n*, 603 Fed. App'x 22, 23–24 (2d Cir. 2015) (quoting *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n. 12 (2d Cir. 2014)).  "Although the Lanham Act does not include a statute of limitations, the Second Circuit has held that the six-year limitations period from New York state fraud law applies." *Gucci America, Inc. v. Guess?, Inc.*, 868 F. Supp.2d 207, 246 (S.D.N.Y. 2012) (citing *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191–92 (2d Cir.1996)). Accordingly, Defendants argue that Plaintiffs' allegations that (a) the King's Guard filed an application to register its trademark with the USPTO in November 2013 (Compl. at ¶ 43), and (b) that in the spring of 2014 Defendants demanded certain members of the WSMRA cease using the Wings Mark (Compl. at ¶ 53), was enough to demonstrate on the face of the complaint that the six-year statute of limitations had expired before Plaintiffs' filed their claim for infringement in April 2021. Def. Mem. of Law at 11–13.

"However, as trademark infringement is a 'continuing wrong,' the statute of limitations defense only applies to bar monetary recovery beyond the statutory period, and does not limit the availability of injunctive relief." *Gucci America, Inc.*, 868 F. Supp.2d at 246 (citing 6 McCarthy on Trademarks § 31:33); *see also Vaad L'Hafotzas Sichos, Inc.*

*v. Kehot Publication Soc.*, 935 F. Supp.2d 595, 602 (E.D.N.Y. 2013) (also citing McCarthy on Trademarks for the same proposition). In the present case, Plaintiffs seek both injunctive relief and monetary damages for Defendants' continuing conduct, such as reproducing and displaying the Wings Mark on their website (Compl. at ¶ 60) and licensing without authorization the use of the Wings Mark (Compl. at ¶ 62). Accordingly, the Court finds that although the statute of limitations will operate to bar monetary recovery for conduct which a fact-finder determines to be beyond the six-year period prior to the time of filing, it does not bar recovery within the statutory period or require dismissal of Plaintiffs' trademark claims at this stage of the proceedings.

With respect to Defendants' laches argument, the Second Circuit has stated:

> [I]n evaluating a laches defense to trademark infringement in a New York suit, we analogize to New York's six-year statute of limitations for fraud claims. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996). The laches clock begins to run when the trademark owner "knew or should have known, not simply that [the infringer] was using the potentially offending mark, but that [it] had a provable infringement claim against [the infringer.]" *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 70 (2d Cir. 2002). For claims brought after a six-year delay, there is a presumption of laches so that the trademark owner must show the inequity of dismissal on that basis. *Conopco*, 95 F.3d at 191. For claims brought within six years, "there is no presumption of laches and the burden remains on the [infringer] to prove the defense." *Id*. To prevail, the infringer "must prove that it has been prejudiced by the [trademark owner's] unreasonable delay in bringing the action." *Id*. at 192.

*Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018). As an affirmative defense, laches "is generally not appropriately raised in a motion to dismiss." *Hicks v. Leslie Feely Fine Art, LLC*, No. 1:20-CV-1991(ER), 2021 WL 982298, at *10 (S.D.N.Y. Mar. 16, 2021) (quoting *Lennon v. Seaman*, 63 F. Supp.2d 428, 439 (S.D.N.Y. 1999). "However, in certain circumstances, when the defense of laches is

clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss." *Id*.

In the present case, it is not clear to the Court from the face of the complaint that Plaintiffs can prove no set of facts to avoid the laches defense. For one, "prejudice ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Conopco, Inc.*, 95 F.3d at 192. It is not clear from the face of the complaint that Defendants have changed their position at all, nor do Defendants submit any argument about "committing massive resources" to their position based on Plaintiffs' failure to file a complaint. *Id.* Further, based on Plaintiffs' TTAB opposition (Compl. at ¶ 50–51) and Defendants' 2017 litigation against Carl Davenport, the individual alleged to have "conceived" of the WSMRA (Compl. at ¶ 15, ¶ 57), Defendants were clearly on notice that Plaintiffs' contested their registration and use of the Wings Mark. *See, e.g., Fitzpatrick v. Sony-BMG Music Ent., Inc.,* No. 07 CIV. 2933 (SAS), 2008 WL 84541, at *3 (S.D.N.Y. Jan. 8, 2008) (finding "the doctrine of laches does not apply" where the plaintiff's opposition to defendants' trademark ownership put defendants on notice that plaintiff contested their use of the mark).

Accordingly, Defendants' statute of limitations and laches arguments are denied without prejudice to renewal as an affirmative defense in Defendants' answer.

*Incontestability*

Defendants correctly assert that the fact that they have registered the Wings Mark in their name provides *prima facie* evidence as to the ownership of those rights. 15 U.S.C.

14

§ 1115(a). Further, the fact that a mark has been deemed "incontestable" under 15 U.S.C. § 1065 for five years of continuous use is "conclusive evidence" of registrants' ownership. However, the mere fact that a party registers its copyrights or trademark rights, or obtains "incontestable" status, does not create substantive ownership rights in the registrant. *Blue Planet Software, Inc. v. Games Int'l, LLC*, 334 F. Supp.2d 425, 436 (S.D.N.Y. 2004).

Rather, "[t]rademark rights attach based upon use of the mark in commerce and registration provides no additional substantive rights against infringement beyond acquired common law rights. *Id*. at 437 (citing *Time, Inc. v. Petersen Pub. Co. L.L.C.*, 173 F.3d 113, 118 (2d Cir.1999)). "Accordingly, registrations merely offer evidence of ownership, and that showing need not be dispositive of the matter if contrary proof is available." *Id.* Indeed, despite what the name suggests, "incontestable" status is subject to several defenses as set forth in 15 U.S.C. § 1115(a), including that the "incontestable" right to use the mark was obtained fraudulently.

Plaintiffs allege that Defendants obtained their registration – and attained "incontestable status" – through fraudulent representations and unauthorized use of the mark. *See, e.g.,* Compl. at ¶ 80, 81. Therefore the defense of incontestability is not sufficient cause to grant Defendants' motion to dismiss.

### *Plaintiff's Failure to Appeal the TTAB's Dismissal and Res Judicata*

In this case, Plaintiffs allege that Defendants' registration of the Wings Mark should be cancelled because Defendants made fraudulent representations to the USPTO during the registration process, and that Defendants' conduct with respect to the Wings Mark constitutes trademark infringement, false designation of origin, and unfair competition in

violation of 15 U.S.C. § 1125(a). Compl. at ¶ 76–92. As indicated above, Plaintiffs allege that they filed an opposition to Defendants' application to the USPTO to register the Wings Mark as their trademark, but they were unable afford legal representation and their opposition was dismissed as "conceded" when Plaintiffs failed to respond to Defendants' motion to dismiss. Compl. at § 50 and 51. Based on this opposition, Defendants argue that Plaintiffs' trademark claims are now barred by the doctrine of *res judicata*, and because Plaintiffs' failed to appeal the USPTO's dismissal of Plaintiffs' opposition to Defendants' registration of the Wings Mark.

"*Res judicata* challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Thompson v. Cty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994) (citing 5A Wright & Miller § 1357, at 356 n. 69). Under the doctrine of *res judicata* (i.e., "claim preclusion"), "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979). Relatedly, under the doctrine of collateral estoppel (i.e., "issue preclusion"), "the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Id. See, e.g., W. Indian Sea Island Cotton Ass'n Inc. v. Threadtex, Inc.*, 761 F. Supp. 1041, 1053 (S.D.N.Y. 1991) (applying the doctrines of *res judicata* and collateral estoppel to trademark infringement claims).

The focus of a trademark infringement action requires "examination of the 'entire marketplace context' of the trademarks in dispute." *Levy v. Kosher Overseers Ass'n of*

*Am., Inc.*, 104 F.3d 38, 43 (2d Cir. 1997) (citation omitted). Eight non-exclusive factors –

the so-called Polaroid factors – are considered when determining whether likelihood of

confusion exists:

> 1) the strength of the plaintiff's mark, 2) the degree of similarity between the plaintiff's and the defendant's marks, 3) the proximity of the products, 4) the likelihood that the plaintiff will "bridge the gap" between the two products, 5) actual confusion between the two marks, 6) the defendant's good faith in adopting its mark, 7) the quality of the defendant's product(s), and 8) the sophistication of buyers of the plaintiff's and defendant's goods or services.

*Id.* at 42 (quoting *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960

(2d Cir. 1996)). By contrast, "[l]itigation before the [USPTO] in opposition proceedings is

. . . [typically] limited to whether one has the right to register a mark, and not whether one

has the right to exclusive use of the mark in practice." *Light Sources, Inc. v. Cosmedico*

*Light, Inc.*, 360 F. Supp.2d 432, 440 (D. Conn. 2005) (citing *Application of Marriott Corp.*,

517 F.2d 1364, 1367 (Cust. & Pat.App.1975)).

Due to the differences in the standards governing such factors as "likelihood of

confusion" in USPTO opposition proceedings and in trademark infringement actions

before the district court, "the Second Circuit and numerous other courts have repeatedly

held that there is no *res judicata* effect of a cancellation proceeding, such as the [USPTO]

proceeding here, on a subsequent federal lawsuit [in district court] alleging unfair

competition and trademark infringement." *Santos v. Hecht*, No. 06CV783(JFB)(MLO),

2006 WL 2166850, at *2–3 (E.D.N.Y. July 31, 2006) (citing, *inter alia*, *Jim Beam Brands*

*Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 736 (2d Cir.1991)). Because a cancellation

proceeding before the USPTO does not involve the same claims as an action, such as

the present case, alleging unfair competition and trademark infringement, the Court finds

that Plaintiffs' present trademark infringement claims are not barred by the doctrine of *res judicata*.

Nevertheless, the doctrine of *res judicata* does preclude Plaintiffs' from seeking a cancellation of the Wings Mark registration on the grounds of fraudulent representations. "Any person who believes that he would be damaged by the registration of a mark upon the principal register . . . may, upon payment of the prescribed fee, file an opposition in the Patent and Trademark Office, stating the grounds therefor . . . ." 15 U.S.C. § 1063(a). Similarly, a party may petition a district court at any time to cancel a registered trademark on the ground that the "registration was obtained fraudulently." 15 U.S.C. § 1064(3). Because Plaintiffs' request for cancellation is based on allegations that "the King's Guard application for registration of the Wings Mark contained fraudulent representations" (Compl. at ¶ 78), and that "King's Guard knowingly and willfully made fraudulent representations to the USPTO in order to deceive the USPTO into granting them registration of the Wings Mark," (Compl. at ¶ 79), this claim could have been brought in the opposition proceedings before the USPTO. *Light Sources, Inc*., 360 F. Supp.2d at 440. As such, the request for cancellation is barred by *res judicata*. *Id.*

Turning to collateral estoppel, that doctrine provides that "the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *W. Indian Sea Island Cotton Ass'n Inc*., 761 F. Supp. at 1053 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)). In this case, Plaintiffs' complaint alleges only that the USPTO dismissed Plaintiffs' opposition as conceded after Plaintiff Broecker failed to

respond to Defendants' motion to dismiss. Compl. at ¶ 51. On such a record, in which the issues which Defendants' raised in their motion to dismiss are not even clear, the Court cannot find that collateral estoppel bars Plaintiffs' claims for trademark infringement.

Plaintiffs' Copyright Infringement Claims

Plaintiffs allege that "[b]y reproducing, distributing, and displaying the Wings Work and derivative works thereof . . . Defendants violated and infringed upon [Plaintiff] Broecker's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501." Compl. at ¶ 96. Plaintiffs also allege that "[o]n information and belief Defendants . . . have provided the Infringing Materials to the Individual Infringers . . . facilitating the unauthorized reproduction, public display, and distribution of the Infringing Materials . . . . in violation of Sections 106 and 501 of the Copyright Act." Compl. at § 105–107.

In moving to dismiss Plaintiffs' copyright claims, Defendants maintain that the "Court is effectively faced with an ownership dispute," in which case a three-year statute of limitations applies. Def. Mem. of Law at 13–14 (citing *Big E. Ent., Inc. v. Zomba Enters., Inc.*, 453 F. Supp.2d 788, 796 (S.D.N.Y. 2006)). Therefore, Defendants argue, Plaintiffs' copyright claims accrued in 2013 when King's Guard filed its trademark application with the USPTO, and "the three-year statute of limitations expired long before the Complaint was filed on April 8, 2021." Def. Mem. of Law at 14.

As Defendants point out, the time limitations for filing claims disputing copyright ownership are different from the limitations for filing claims for copyright infringement:

> Civil actions under the Copyright Act must be brought "within three years after the claim has accrued." 17 U.S.C. § 507(b). An ownership claim accrues only once, when "a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." *Stone v. Williams*, 970 F.2d

1043, 1048 (2d Cir. 1992) . . . . By contrast, an infringement action may be commenced within three years of any infringing act, regardless of any prior acts of infringement; we have applied the three-year limitations period to bar only recovery for infringing acts occurring outside the three-year period. See *Merchant v. Levy*, 92 F.3d 51, 57 n. 8 (2d Cir. 1996).

*Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011). As one court in this Circuit has stated, "the statute of limitations cannot be defeated by portraying an action as one for infringement when copyright ownership rights are the true matter at issue." *Big E. Ent., Inc.*, 453 F. Supp.2d at 795 (S.D.N.Y. 2006) (quoting *Minder Music Ltd. v. Mellow Smoke Music Co.*, 1999 WL 820575 at *2 (S.D.N.Y. Oct.14, 1999)).

After a thorough review of the complaint and the papers in this case, the Court disagrees with Defendants' argument that "ownership is the essential issue" in Plaintiffs' copyright claims. Defendants acknowledge that Broecker registered his copyright for the Wings Work with the Copyright Office on December 4, 2007; they suggest only that their registration of the Wings Mark as a trademark with the USPTO puts the question of ownership of the Wings Work copyright at issue. *See, e.g.,* Reply, 5, Jul. 23, 2021, ECF No. 13. As Plaintiffs maintain, Defendants' argument incorrectly "conflates" trademark and copyright law, two distinct areas of intellectual property law.

Trademark law emanates from the Constitution's Commerce Clause, and is "concerned with protection of the symbols, elements or devices used to identify a product in the marketplace and to prevent confusion as to its source." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 63 (2d Cir.2000)); *see also*, *In re: Trade-Mark Cases*, 100 U.S. 82, 94 (1879). Copyright and patent law, on the other hand, emanate from Article I, § 8, clause 8 of the Constitution, which grants Congress the

authority "to promote the Progress of Science and Useful Arts by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." Copyright law rewards innovation and protects the artist's rights in his creative work by providing the "right to exclude others from using his property[.]" *Authors Guild v. Google, Inc.*, 770 F. Supp.2d 666, 681 (S.D.N.Y. 2011). The Supreme Court has been "careful to caution against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003).

In the case of *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 131 F. Supp.3d 196 (S.D.N.Y. 2015), Judge Failla from the Southern District of New York succinctly summarized the interplay of copyright and trademark law:

> The body of law addressing the coexistence of, and conflicts between, trademark and copyright law is inchoate. *See, e.g., Elements Spirits, Inc. v. Iconic Brands, Inc.*, No. 15 Civ. 02692(DDP) (AGRX), 2015 WL 3649295, at *4 (C.D.Cal. June 11, 2015) ("The universe of cases that deal with conflicts between trademarks and copyrights is small and not fully developed."). Courts considering the issue have generally held, however, that a copyright does not provide "an automatic defense to any trademark." *Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1280 (11th Cir. 2012). To conclude otherwise, these courts have found, would permit parties to circumvent trademark law easily by simply "drawing another's trademark and then placing that drawing on various products with impunity." *Id*. Accordingly, these courts have concluded that "a valid copyright does not entitle the copyright holder to infringe another's trade dress rights." *Nova Wines, Inc. v. Adler Fels Winery LLC*, 467 F. Supp.2d 965, 983 (N.D.Cal. 2006). Conversely, trademark laws cannot be used as tools to circumvent the protections afforded by valid copyrights. *See Elements Spirits, Inc.*, 2015 WL 3649295, at *5 ("Just as one may not draw another's trademark, copyright the drawing, and thereby evade trademark law, one also may not appropriate another's copyrighted work as one's trademark, place it into use so as to create secondary meaning and customer brand familiarity, and thereby evade copyright law.").

> As the preceding analysis illustrates, the interplay between trademarks and copyrights is at once complex and ill-defined. Moreover, whatever broad rules have been discerned at the junction of trademark and copyright law, their application in specific cases has been fact-intensive. *In other words, the existence of a copyright does not automatically invalidate a trademark, just as the existence of a trademark does not automatically vitiate a copyright*.

*A.V.E.L.A., Inc.*, 131 F. Supp.3d at 207 (emphasis added).

In the present case, Plaintiffs argue that Defendants used trademark law to subvert Plaintiffs' copyrights. Defendants, on the other hand, argue that Plaintiffs are using copyright law to subvert their trademark. Given the necessarily fact-intensive nature of the analysis, the Court cannot conclude at this point, as a matter of law, that Defendants' registration of its trademark with the USPTO constituted a challenge to Plaintiffs' ownership of the Wings Work copyright, and that Plaintiffs' cause of action therefore accrued at that time. Indeed, it is unclear whether the Defendants' trademark application has any bearing on Plaintiffs' copyright in the Wings Work at all. Consequently, Defendants' attempt to frame Plaintiffs' copyright claims as an ownership dispute must be rejected at this stage.

Accordingly, the Court will apply the three-year statute of limitations to infringing claims, as set forth in 17 U.S.C. § 501(a). As indicated above, under this provision, "an infringement action may be commenced within three years of any infringing act." *Kwan*, 634 F.3d at 228. Here, Plaintiffs allege acts of infringement commencing in 2018, 2019, and 2020, all of which appear to fall within the three year statute of limitations. Therefore, Defendants' motion to dismiss Plaintiffs' claims of copyright infringement and contributory copyright infringement on statute of limitations grounds is denied without prejudice to

renewal as affirmative defenses in Defendants' answer.

CONCLUSION

For the reasons explained above, Defendants' motion to dismiss [ECF No. 10] is granted in part, and denied in part. Accordingly, it is hereby,

ORDERED that Plaintiffs' causes of action for declaratory judgment and cancellation of Defendants' registration of the Wings Mark with the USPTO, respectively, are dismissed; and it is further

ORDERED that Defendants file and serve a response to the remaining claims in Plaintiffs' complaint on or before 30 days from the date of this order.

SO ORDERED.

Dated:          November 15, 2021
                Rochester, New York

                                        ENTER:


                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge